UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT DAUNIELLE PARIS,

                    Petitioner,

                                                    Case Number 11-15162
v.                                                  Honorable David M. Lawson

STEVE RIVARD,

                    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Lamont Daunielle Paris, has filed a *pro se* petition for a writ of habeas corpus

under 28 U.S.C. § 2254. The petitioner was convicted in the Wayne County, Michigan circuit court

of three counts of assault with intent to commit murder and various firearms charges, and was

sentenced to substantial prison terms for these crimes. The habeas petition raises nineteen claims

challenging the charges against the petitioner, the pretrial identification procedures, the trial judge,

the prosecutor, the defense attorney, the evidence at trial, and the sentence. The respondent's

answer asserts that the petitioner did not preserve several of his claims properly and that all of his

claims lack merit. The Court has determined from a review of the pleadings and record that the

petitioner's claims lack merit and that the state courts' adjudications of the claims were objectively

reasonable. The petition, therefore, will be denied.

I.

The Michigan Court of Appeals accurately summarized the evidence adduced at trial as

follows:

> This case arises from a shooting outside a Detroit nightclub on April 12,
> 2003. That evening, while working as parking lot attendants at the nightclub,
> Muhammad Shahid and Rana Kahn heard at least 10 to 15 shots fired in the parking

lot of the nightclub. Shahid believed that defendant was one of the shooters because as he was patroling the parking lot he observed defendant and Rhashi Harris by a blue van carrying rifles and one man said to him "Stay away, stay away." Both Shahid and Kahn had their backs turned to the shooters during the time in which the shots were fired.

Bullets struck a Mercedes Benz which was occupied by Tommie Hodges and a female passenger later identified as Meleta Miller. Observers witnessed the Mercedes speed away with bullets being fired in its general direction. Once the car was forced to stop at a traffic signal, Miller exited the vehicle and ran away. Hodges exited the vehicle and fired several shots toward the nightclub.

Police arrived on the scene shortly after the shooting and began to track the suspects. After an officer attempted to make contact with the suspects, they fled through surrounding neighborhoods. Police observed the suspects drop several items as they attempted to elude the officers. After defendant and Harris were arrested, the police went back and searched the area where the suspects threw objects during the chase. The officers recovered two handguns, a bulletproof vest and two semiautomatic rifles. Additionally, officers recovered magazines with live rounds and ten spent shell casings near the blue van where Shahid had seen defendant and Harris with rifles.

*People v. Paris*, No. 278571, 2008 WL 4276923, at *1 (Mich. Ct. App. Sept. 18, 2008).

The prosecutor's theory was that the shooting was an attempt to assassinate Tommie Hodges, and that under the doctrine of transferred intent, the petitioner was also guilty of assault with intent to murder Meleta Miller and Darryl White, a night club employee who was injured during the shooting. The petitioner did not testify or present any witnesses. His attorney maintained that Tommie Hodges was a known drug dealer who traveled with armed gang members. The defense theory was that there was a lack of evidence linking the petitioner to the crimes and that the prosecution did not prove the elements of the crimes beyond a reasonable doubt.

Although the trial court instructed the jury on the lesser offense of assault with intent to do great bodily harm less than murder, the jury found the petitioner guilty as charged of three counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, one count of felon in

possession of a firearm, Mich. Comp. Laws § 750.224f, one count of discharge of a weapon at a building, Mich. Comp. Laws § 750.234b, and one count of felony firearm, second offense, Mich. Comp. Laws § 750.227b. The trial court sentenced the petitioner as a habitual offender, Mich. Comp. Laws § 769.10, to concurrent prison terms of 50 to 70 years for each of the assault convictions, three to seven years for the felon-in-possession conviction, two to six years for the discharge-of-a-weapon conviction, and a consecutive term of five years for the felony-firearm conviction.

The petitioner raised his first eight habeas claims on direct appeal. The Michigan Court of Appeals affirmed his convictions and sentences in an unpublished, *per curiam* opinion. *People v. Paris*, No. 278571, 2008 WL 4276923 (Mich. Ct. App. Sept. 18, 2008). The Court of Appeals ruled that

> (1) there was sufficient evidence for a jury to infer beyond a reasonable doubt that defendant committed the charged offenses, (2) the trial court did not abuse its discretion when it authorized limited reimbursement to defendant for an expert witness, (3) the trial court did not err when it denied defendant's motion to suppress the bulletproof vest, (4) the trial court did not demonstrate bias at defendant's trial, (5) the prosecutor's direct examination of Sergeant Babcock was not improper, (6) defendant was not denied the effective assistance of counsel, . . . (7) the trial court's departure from the sentencing guidelines was not an abuse of discretion, [and (8)] no actual errors cumulatively affected his right to a fair trial.

*Id*., 2008 WL 4276923, at *10. The Michigan Supreme Court denied the petitioner's application for leave to appeal on March 23, 2009, because it was not persuaded to review the issues. *People v. Paris*, 483 Mich. 914, 762 N.W.2d 498 (2009) (table).

On November 2, 2009, the petitioner filed a motion for relief from judgment in which he raised his remaining habeas claims. The trial court denied his motion for a variety of reasons, including the failure to establish "actual prejudice from the alleged irregularities that support the

claim for relief." Mich. Ct. R. 6.508(D)(3)(b). The petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied his application for failure to establish entitlement to relief under Michigan Court Rule 6.508(D), *People v. Paris*, No. 296541 (Mich. Ct. App. Oct. 11, 2010), and the Michigan Supreme Court denied leave to appeal for the same reason on June 28, 2011, *People v. Paris*, 489 Mich. 971, 798 N.W.2d 774 (2011) (table).

On November 22, 2011, the petitioner filed his habeas corpus petition, which sets forth the following grounds for relief:

I. The prosecution failed to produce legally sufficient evidence to identify appellant as the perpetrator or prove his guilt beyond a reasonable doubt.

II. The trial court denied appellant due process and violated his rights to confrontation and to present a defense by refusing to appoint [a] firearms expert witness to rebut the expert testimony on gunshot residue testing introduced by the prosecution.

III. The trial court reversibly erred in [denying] the defense motion to suppress evidence of a bulletproof vest found on the street, as the prosecution could not lay a sufficient [foundation] to prove that the item had any connection to the charged offense.

IV. The trial judge's order that defense counsel apologize to the jury for causing a delay in the proceedings by attending to other pending cases during a recess was an abuse of discretion and served to prejudice the jury.

V. The prosecutor violated appellant's right to remain silent and denied him a fair trial by admitting evidence of appellant's exercise of his right to remain silent.

VI. Appellant was denied the effective assistance of counsel by counsel's failure to object to the inadmissible and highly inflammatory evidence that appellant was arrested by the Drug Enforcement Agency.

VII. Appellant is entitled to resentencing because the sentence imposed is a departure unsupported by substantial and compelling evidence.

VIII. The cumulative effect of the errors in this case deprived appellant of his federal and state due process rights.

-4-

IX.    Whether constitutional error occurred against the 14th Amendment, in conjunction with a 4th Amendement violation[,] when the Wayne County Police Department and the prosecutor's office, [by their] arbitrary actions, unequivocally [revealed that] an abuse of process was used, by instituting an illegal process for prosecution, used in [an] improper and unauthorized manner, that caused defendant Paris to suffer damages as a result of abuse.

X.     Whether constitutional error occurred against the 4th and 14th Amendment[s] for structural error when the police and prosecutor failed to follow the protocol for the statutory requirement for arrest, thus creating jurisdictional defects for want of subject matter jurisdiction over the statutory charge.

XI.    Whether constitutional error occurred against the 14th Amendment when defendant Paris was denied the right to a corporeal line up before the commencement of using a photo array that was unduly suggestive, fixed and devised to create a false nexus in connection with the accused.

XII.   Constitutional error occurred against the 14th Amendment when the prosecutor's office charged defendant Paris with assault [with] intent to murder which is actually an inapplicable charge when there's not a scintilla of evidence to substantiate [that] the defendant was responsible for the crime.

XIII.  Constitutional error occurred agains the 6th Amendment when the defendant has never had a legal opportunity to confront or cross-examine the purported civilian complainants at a preliminary examination hearing, nor at trial, thus creating a radical jurisdictional defect that makes [the] prosecution null and void.

XIV.   Whether constitutional error occurred against the 5th Amendment when the defendant was charged for the multiple punishment for the same offense when the elements and evidence did not support the statutory charge, [and the] possible complainants [never filed] a civilian's complaint, for the commencement of [the] prosecution.

XV.    Whether constitutional error occurred against the 14th Amendment when the defendant was tried and convicted on the theory of guilt in the absence of the prosecutor's office having the actual evidence to legally charge the defendant for a specific intent crime.

XVI.   Whether constitutional error occurred against the 4th and 14th Amendment when the actions of the police department and the prosecutor's office manifest[ed] direct acts of obstruction of justice when mandatory discovery materials [were] suppressed, [revealing] either inculpatory or exculpatory

evidence, [and] if exculpatory, defendant Paris would be exonerated altogether.

XVII.   Whether constitutional error occurred against the 4th and 14th Amendment[s] when the material record reveals [that] the trial judge[']s actions presiding over the case [were biased] and created a manifest injustice, as well as a miscarriage of justice, MCL § 769.26, that [led] to the defendant being convicted behind the malfeasance in office.

XVIII.  Whether constitutional error occurred against the 14th Amendment when the defendant's incarceration originated through selective prosecution absent subject matter jurisdiction governing the statutory charges sustained.

XIX.    Whether constitutional error occurred against the Sixth Amendment when trial counsel[']s actions manifest[ed] gross negligence and a willful and wanton disregard [of his duty] to challenge the averments presented[,] which deprive[d] the defendant of a fair trial and equal protection and due process of the law.

Pet. at 8-36.  The respondent argues that the petitioner failed to preserve several of his claims by not objecting at trial, by not raising his claims on direct appeal, or by abandoning his claims.  A procedural default, however, is not a jurisdictional bar to review of a claim, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  Because the petitioner's claims lack merit, the Court proceeds directly to the merits.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  Because Paris filed his petition after the AEDPA's

-6-

effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks

and citations omitted)); *see also Dewald v. Wrigglesworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

## A.

Habeas claims one, twelve, and fifteen challenge the sufficiency of the evidence adduced at trial. The petitioner alleges that the prosecution failed to produce sufficient evidence that he was one of the perpetrators of the crimes. He says that none of the witnesses saw him fire a weapon, the description of the suspect given by witnesses did not match him, and the guns discovered by the police could not be linked to him through fingerprints or ballistic tests. The petitioner also contends that two of the purported victims did not file a complaint, did not provide a statement to the police, and did not testify under oath that they were victims of a crime. The petitioner alleges that there was no proof he assaulted Tommie Hodges and Meleta Miller, and even though Darryl White was injured, White did not know who fired the gun. Additionally, the petitioner claims that there was no evidence of an intent to kill.

The petitioner first raised a sufficiency-of-the-evidence claim on direct appeal of his convictions. The Michigan Court of Appeals opined that there was plenty of evidence for a jury to conclude beyond a reasonable doubt that the petitioner was the perpetrator of the crimes. The petitioner also raised two sufficiency-of-the-evidence claims in his motion for relief from judgment

-8-

and subsequent appeal. The state trial court concluded that it was precluded from granting relief on the claims because the Michigan Court of Appeals decided the issue against the petitioner on his direct appeal.

The United States Supreme Court has held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . . [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d at 205 (citing *Jackson*, 443 U.S. at 319) (emphasis in original). Second, even if the Court were "to conclude that a rational trier of fact could *not* have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id*.

-9-

"The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). In Michigan, "it is well settled that identity is an element of every offense." *People v. Yost*, 278 Mich. App. 341, 356, 749 N.W.2d 753, 767 (2008) (citing *People v. Oliphant*, 399 Mich. 472, 489, 250 N.W.2d 443 (1976); *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967)). Beyond that, "[t]he elements of the crime of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Plummer*, 229 Mich. App. 293, 305, 581 N.W.2d 753, 759 (Mich. Ct. App. 1998) (citing *People v. Lugo*, 214 Mich. App. 699, 710, 542 N.W.2d 921, 927 (1995)). The petitioner's only challenge to the other crimes for which he was convicted is that there was no evidence that he was one of the perpetrators of the crimes or that he possessed a gun on the night in question.

The Michigan Court of Appeals summarized the evidence supporting the charged crimes as follows:

> On the night of the shooting, a parking attendant, Muhammad Shahid, saw defendant and Rhashi Harris in a blue van, parked in the lot across from the nightclub. Just before Shahid heard gunfire, he saw defendant and Harris exit the blue van holding rifles. They warned him to stay away. Then, witnesses heard gunshots fired toward a vehicle parked in front of a nightclub, where Tommie Hodges and Meleta Miller sat. Security guards and approximately 15 patrons standing nearby ran for safety. Darryl White was struck in the cornea. After the shooting, the rifles that Shahid saw defendant and Harris carry were abandoned in the parking lot and another parking attendant, Rana Kahn, saw two men running away toward Gratiot Avenue. Officers Scott Hall and Albert Andrews saw defendant and Harris on Gratiot Avenue and confirmed that they matched the dispatch descriptions of the suspects. Moreover, defendant's consciousness of guilt could be inferred from his flight from these officers. Finally, gunshot residue on defendant's body indicated that he fired a gun recently.

*Paris*, 2008 WL 4276923, at *2.

-10-

There was additional evidence that Shahid identified both the petitioner and Harris in photo arrays less than a week after the shooting. Although Shahid admitted at trial that he did not observe the actual shooting, he was convinced that the petitioner was one of the people he had seen with a weapon on the night in question and that the petitioner had fired a gun at the Mercedes Benz where two of the victims were seated.

Rana Kahn, the other parking lot attendant, testified that the gunshots came from the area where the van was parked and that the gunshots hit the Mercedes. The rifles found in the parking lot were lying near the van that the petitioner and Harris had exited.

Police Officer Jeremy Macicol testified that magazines containing live ammunition also were found in the parking lot, and ten casings were located not far from the rifles and the van. Some of the vehicles in the area were damaged from apparent gunshots, and the sidewalk had fresh gouges that could have been caused by gunshots.

Officer Scott Hall testified that as he was chasing the two men whom he thought were responsible for the shooting, he observed one of them toss a dark object to the ground; the other man threw what appeared to be a jacket or coat on the ground. After the two men were apprehended, Officer Hall retraced his steps. He and some other officers found a handgun and a bulletproof vest where he had seen the suspects discard objects.

Harris was wearing a different bulletproof vest at the time of his arrest, and gunshot residue was detected on the petitioner's left hand, face, and jacket. The parties stipulated that the petitioner had been convicted of a prior felony and was not eligible to possess a firearm on April 12, 2003.

The officer in charge of the case, Richard Seagram, testified that the trial was delayed because the petitioner was "on the lam for about four years." Although Investigator Seagram

-11-

admitted that he did not know whether the petitioner was aware of the outstanding warrant for his arrest, he testified that his attempts to contact the petitioner at the address and telephone number given to him were unsuccessful.  Investigator Seagram also testified that after the petitioner's initial arrest, he (Seagram) explained to the petitioner that he was being released pending an investigation and that, if an arrest warrant were issued, he would be contacting him.  Despite this explanation, the petitioner could not be located after a warrant was issued for his arrest, and he did not surrender to the police even though Rhashi Harris was tried and convicted in 2004, and even though the petitioner was featured on Michigan's most wanted list and on the show America's Most Wanted.

A rational trier of fact could have concluded from all the evidence taken in the light most favorable to the prosecution that the petitioner was one of the shooters outside Tiffany's night club on April 12, 2003.  A rational trier of fact also could have concluded that:  the petitioner was a convicted felon on April 12, 2003, and was not eligible to possess a gun; he possessed a gun that night and used it during the commission of an assault or other felony; he assaulted Darryl White, Tommie Hodges, and Meleta Miller by firing multiple gunshots at them with intent to kill them; and he discharged his gun at Tiffany's night club.

Although the petitioner argues that the prosecution failed to eliminate "equally plausible" theories that he was not culpable, "[t]he state need not rule out every hypothesis except that of guilt beyond a reasonable doubt, and the reviewing court need not be convinced of [the] petitioner's guilt beyond a reasonable doubt."  *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995) (citing *Neal v. Morris*, 972 F.2d 675, 677-78 (6th Cir. 1992)).  Therefore, the state courts' rejection of the petitioner's claims did not contravene or unreasonably apply Supreme Court case law interpreting

-12-

the Due Process Clause.  It follows, then, that the petitioner has no right to relief on the basis of his sufficiency-of-the-evidence claims.

B.

The petitioner alleges next that the state trial court deprived him of his constitutional right to due process, his right to confront the witnesses against him, and his right to present a defense by refusing to appoint an expert witness on firearms to assist him.  The petitioner argues that he needed an expert witness on firearms to rebut a prosecution witness's testimony that the petitioner tested positive for gunshot residue.  Without an expert defense witness, the petitioner contends that he had no way to show that the gunshot residue test or the procedures used to analyze the swabs taken from him were flawed.  The Michigan Court of Appeals adjudicated the petitioner's claim on direct review and concluded that the petitioner mischaracterized the trial court's response to his request for appointment of an expert witness, and that any error was harmless.

The record supports the state court's conclusions.  The trial court granted, rather than denied, the petitioner's request for funds for an expert defense witness.  Hr'g Tr. at 3 (Apr. 26, 2007).  Although the trial court authorized only $250 plus $50 for every jail visit, *see ibid*., the petitioner has not alleged that he was unable to retain an expert witness due to the limited funds available for an expert witness.  He initially requested $2,000 for an expert witness, but his attorney indicated that the total fee might be less, depending on how much they used the witness, and that the expert witness was willing to charge only $100 per hour even though the expert recently had increased his fee.  Hr'g Tr. at 7 (Apr. 20, 2007).  The Michigan Court of Appeals determined that $250 for fees fell within the range of principled outcomes, because the trial court had estimated that the witness could testify in two hours.

-13-

Furthermore, the petitioner has pointed to no Supreme Court case that requires appointment of an expert witness on firearms to assist an indigent defendant. The Supreme Court has held that states must provide a defendant access to a competent psychiatrist to assist the defendant in the preparation of a defense if the defendant's sanity at the time of the offense is a significant factor at trial. *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). But the Supreme Court has not extended this right to other expert witnesses.

Even if constitutional error occurred, the error was harmless because the petitioner was not deprived of "the basic tools of an adequate defense ." *Britt v. North Carolina*, 404 U.S. 226, 227 (1971). Defense counsel skillfully cross-examined prosecution witnesses about the gunshot residue test. Counsel insinuated during his cross-examination of David Babcock, who swabbed the petitioner, that the FBI no longer used gunshot residue tests because they were unreliable. Trial Tr. Vol. II, 116-17 (May 2, 2007). Defense counsel also elicited Mr. Babcock's testimony that a person can acquire gunshot residue by means other than firing a weapon and that residue can be transferred from one person to another person or from clothing to a person's hand. *Id*. at 117-20, 123-24.

Prosecution witness William Steiner analyzed the swabs, and he testified that gunshot residue is a vapor which can spread several feet. *Id*. at 147. Mr. Steiner explained that it is possible for someone who did not fire a gun to be enveloped in the vapor cloud and to have residue deposited on the person. *Id*. at 155. Mr. Steiner also stated that gunshot residue can transfer from one person to another person and that there can be a secondary transfer. *Id*. at 156-57. Defense counsel brought out the fact that vapor travels and can land on almost anything and can be transferred between people who are housed together in a cell. *Id*. at 159-60. Defense counsel also elicited Mr. Steiner's

admission that he could not determine how residue arrives where it lands, and he could not say whether the petitioner actually fired a gun. *Id*. at 164, 169.

In light of the extensive testimony on gunshot residue, including testimony that was helpful to the defense, any constitutional error that resulted from the trial court's failure to appropriate more money for a defense expert witness could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Therefore, the state appellate court's conclusion — that the alleged error was harmless — was objectively reasonable, and the petitioner has no right to relief on the basis of his second claim.

C.

The third habeas claim alleges that the trial court erred by denying the petitioner's motion to suppress evidence of the bulletproof vest that the police found on the street following Officer Scott Hall's chase of the suspects on foot. The petitioner claims that the prosecution failed to lay a foundation for the evidence and failed to prove that the vest was connected to the charged offenses.

The Michigan Court of Appeals disagreed with the petitioner. It ruled that the trial court did not abuse its discretion by denying the petitioner's motion to suppress evidence of the vest because the prosecution laid a proper foundation for admission of the vest, the vest was relevant evidence, and its admission was not unfairly prejudicial.

The petitioner here does not contend that the vest was seized improperly or was discovered through any police illegality. He has not tied the evidence to any constitutional violation. Rather, his argument is that the trial court did not apply the state rules of evidence correctly when it received the item in evidence. But errors in the application of state law, especially rulings on the admission

or exclusion of evidence, generally are not questioned on habeas corpus review. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)). That is because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (*per curiam*)). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Hodges*, 423 U.S. at 21). "Trial court errors in state procedure [or] evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo,* 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70).

Admission of the bulletproof vest was not fundamentally unfair because Officer Hall testified that he chased the suspects on foot and observed one of the suspects discard an item that later turned out to be the vest. And because Rhashi Harris was wearing a bulletproof vest at his arrest, the jury could have inferred that the petitioner was the suspect who discarded the vest on the street. That evidence was relevant because it tended to show that the petitioner had been prepared for a gun fight, was armed, and discarded the vest to avoid appearing guilty. The vest supported the prosecution's theory that the petitioner was guilty of the three firearm offenses and that he intended to kill the occupants of the Mercedes Benz.

Because it was not fundamentally unfair to admit evidence of the bulletproof vest, the petitioner's evidentiary claim is not cognizable on habeas review, and the state appellate court's

conclusion — that the trial court did not err by denying the petitioner's motion to suppress — was reasonable. Habeas relief is not warranted.

D.

On the second day of trial, the trial court asked defense counsel to apologize to the jury for a delay in the trial that resulted from defense counsel attending to other cases. The petitioner claims that the trial court abused its discretion and caused the jurors to be prejudiced against him by ordering defense counsel to apologize to the jury. The petitioner contends that the trial court's comments relieved the jury of its responsibility for the verdict.

The Michigan Court of Appeals reviewed the petitioner's claim for "plain error" because he did not preserve the claim for appeal. The Court of Appeals then reviewed the facts and concluded that plain error did not occur because the trial court did not reprimand defense counsel in the jury's presence and the trial court's order to apologize in all likelihood did not influence the jury to the petitioner's detriment.

The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution the right to a trial by an impartial jury. U.S. Const. amend. VI. That right includes "the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.'" *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993). But a trial judge is not a mere moderator in a jury trial; he or she "is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." *Quercia v. United States*, 289 U.S. 466, 469 (1933). Further,

> "[u]nless they amount to constitutional violations, prejudicial comments and conduct by a judge in a criminal trial are not proper subjects for collateral attack on a conviction." *Brinlee v. Crisp*, 608 F.2d 839, 853 (10th Cir. 1979), *cert. denied*, 444 U.S. 1047, 100 S. Ct. 737, 62 L.Ed.2d 733 (1980). In collateral proceedings, the test is "whether the errors alleged . . . could have rendered [the] trial fundamentally unfair." *Buckelew v. United States*, 575 F.2d 515, 518 (5th Cir. 1978). To violate

-17-

> a defendant's right to a fair trial, "a trial judge's intervention in the conduct of a
> criminal trial would have to reach a significant extent and be adverse to the
> defendant to a substantial degree." *Daye v. Attorney General of New York*, 712 F.2d
> 1566, 1572 (2d Cir. 1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d
> 184 (1984).

*McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985).

On the second day of trial, a recess was taken following the testimony of two prosecution witnesses. After the recess, the trial court pointed out to defense counsel in the jury's absence that counsel had been asked to return to the courtroom in seven minutes and that he had inconvenienced the jurors by making them wait a long time. The trial court then suggested to defense counsel that he apologize to the jurors because the court had apologized to them for a delay earlier that morning. The trial court stated that defense counsel had overstepped his bounds by going to other courts to conduct business and that, during future breaks, he should stay in the courtroom. Trial Tr. Vol. II, 97 (May 2, 2007).

Defense counsel apologized to the jurors when they re-entered the courtroom. He asked for their forgiveness, assumed full responsibility for the delay, and explained that the delay was due to his heavy case load and the many things he had to do. He promised not to inconvenience the jurors again. *Id*. at 98. The trial then resumed with testimony from the next witness.

The trial court's comments and suggestion that defense counsel apologize to the jury did not render the trial fundamentally unfair because the trial court did not admonish defense counsel in the jury's presence. In fact, the judge made a point of stating to defense counsel that she did not want to reprimand counsel in front of the jury. *Id*. at 83. The court's comments were not inappropriate. They were neither hostile, nor disrespectful, and the court did not encroach on the jury's fact-finding function in any way.

-18-

The trial court's conduct did not amount to an abuse of discretion and did not violate the petitioner's constitutional right to due process. Habeas relief is unwarranted.

E.

The fifth habeas claim alleges that the prosecutor violated the petitioner's right to remain silent and his right to a fair trial by eliciting testimony that the petitioner refused to answer a police officer's questions during the swabbing for gunshot residue. The Michigan Court of Appeals reviewed this claim for plain error because the petitioner did not make a contemporaneous objection or a request for a curative jury instruction at trial. The Court of Appeals then concluded that, because the petitioner answered some of the officer's questions, his mere failure to answer other questions in the middle of the interview did not invoke his right to remain silent, and he was not denied a fair trial when the prosecutor elicited the officer's testimony.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that before a custodial interrogation takes place, the suspect "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. at 444. The petitioner relies on *Doyle v. Ohio*, 426 U.S. 610 (1976), in which the Supreme Court stated that

> [s]ilence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings.

*Id*. at 617-18 (internal citation and footnote omitted).

The *Doyle* Court held that the use for impeachment purposes of a petitioner's silence at the time of his arrest and after he has received *Miranda* warnings violates the Due Process Clause of

-19-

the Fourteenth Amendment. *Id*. at 619. In reaching that conclusion, the Supreme Court stated that " 'it does not comport with due process to permit the prosecution during trial to call attention to [the defendant's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony.' " *Ibid*. (quoting *United States v. Hale*, 422 U.S. 171, 182-83 (1975) (White, J., concurring in judgment)).

The petitioner's claim arises from Sergeant David Babcock's testimony on direct examination that, when he administered a gunshot residue test to the petitioner, he asked the petitioner a series of questions. After asking the petitioner some basic questions, which the petitioner answered, he asked the petitioner whether he had possessed a firearm, whether he had been near a fired gun, and whether he had made any statements regarding the discharge or handling of a firearm. Sergeant Babcock testified that the petitioner did not respond to those three questions. Later, however, the petitioner informed Sergeant Babcock that, as he was running from the police he did not fire a gun. Trial Tr. Vol. II, 111-12 (May 2, 2007.)

On cross-examination, Sergeant Babcock clarified what had happened. He testified that, when he asked the petitioner whether he had fired a weapon, the petitioner answered, "No," and then said that, as he was running from the police, he did not fire a gun. *Id*. at 122-23.

The record does not indicate whether Sergeant Babcock advised the petitioner of his *Miranda* rights before questioning him. But, even assuming that he did, this case is unlike *Doyle* because the petitioner did not testify at trial. Furthermore, the petitioner did not remain silent; he answered the critical question about whether he had fired a gun. Defense counsel, in fact, argued to the jury that the petitioner knew he had a right to remain silent and that he had voluntarily talked to the officer

and said, "I never fired a gun." Trial Tr. III, 114 (May 3, 2007.) "[A] defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *Anderson v. Charles*, 447 U.S. 404, 408 (1980).

Finally, even if a due process violation occurred, the alleged error was harmless because the evidence against the petitioner was substantial and the prosecutor did not mention the petitioner's silence in his closing argument. Further, defense counsel stressed the fact that the petitioner denied firing a gun when Sergeant Babcock spoke to him, and the trial court instructed the jurors at the conclusion of the case that the petitioner did not have to prove his innocence or do anything. It is unlikely that the petitioner's partial silence following his initial arrest was a factor in the jury's decision to find the petitioner guilty. The petitioner therefore has no right to habeas relief on the basis of his claim that his right to remain silent was violated.

F.

The petitioner alleges in his sixth habeas claim that his trial attorney was ineffective by failing to object to "other acts" evidence that the petitioner was arrested by the Drug Enforcement Agency (DEA). The petitioner contends that his attorney should have objected on substantive grounds or taken other steps to insure that the jury would not use his drug arrest as evidence against him in the shooting of a drug dealer. The Michigan Court of Appeals disagreed with the petitioner and concluded that defense counsel was not ineffective by failing to object to the testimony.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "[A] defendant must show both deficient performance and prejudice in order to prove

-21-

that he has received ineffective assistance of counsel." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).

Because of the high deference accorded state court determinations by AEDPA, establishing that counsel was ineffective and, therefore, the petitioner was denied his right to counsel under the Sixth Amendment is difficult. The Supreme Court explained in *Richter* that

> "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Ibid*. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, 562 U.S. at 105.

In other words, on habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid*. (citing *Alvarado*, 541 U.S. at 664).

The disputed testimony about the petitioner's arrest by the DEA occurred when the prosecutor asked police investigator Richard Seagram whether the police located and arrested the

petitioner between 2003 and 2006.  Investigator Seagram answered that he thought the petitioner was arrested in 2006.  Seagram explained that he had received a call from a friend who worked for the DEA and who knew that Seagram was the officer in charge of the petitioner's state case.  Although defense counsel twice objected in advance to whatever the DEA employee may have said to Seagram, Seagram subsequently testified that his friend had advised him that the DEA arrested the petitioner.  Trial Tr. Vol. III, 36-38 (May 3, 2007).

Defense counsel did not make another objection after Seagram made the comment about the DEA arresting the petitioner.  Nor did defense counsel request a cautionary jury instruction.  However, none of the details of the petitioner's arrest by the DEA were revealed, and defense counsel may have concluded that an additional objection or request for a cautionary jury instruction would have drawn more attention to the arrest.  Furthermore, the Michigan Court of Appeals determined that  evidence of the petitioner's arrest was admissible to prove the petitioner's motive or reason for shooting at Hodges.  The court of appeals stated:

> If defendant had been arrested for a drug-related offense, it could be inferred that he was involved in the drug trade.  It could also be inferred that he was an enemy of Hodges, who allegedly was a drug trafficker, thereby making it more probable that defendant had a reason to shoot Hodges.

*Paris*, 2008 WL 4276923, at *7.

Additionally, because defense counsel maintained that the police initially released the petitioner because they did not believe he was guilty, the court of appeals opined that the timeline of the investigation, the pursuit of the petitioner, and his delayed arrest were within the range of litigated matters in controversy.  The court of appeals reasoned that the disputed testimony made the petitioner's argument — that the police did not think he was guilty — less probable.  *Id*. at *7 n.4.  The court of appeals also stated that the probative value of the testimony was not outweighed

-23-

by its potential prejudice, because the record did not establish that it was given preemptive or undue weight. The court of appeals noted that the specific offense was not articulated, the reference to the arrest was isolated, and the prosecutor did not pursue motive in his closing argument. *Id*. at *7.

The state appellate court's ruling was objectively reasonable. This Court, moreover, notes that the jury was informed, on the felon-in-possession count, that the petitioner had a prior felony conviction. There was additional evidence that the photo of the petitioner used in the array shown to Muhammad Shahid was taken from a database of all people who were arrested in Detroit. Trial Tr. Vol. III, 54 (May 3, 2007). In light of evidence that the petitioner already was listed in the Detroit Police Department's database and had been convicted of a felony, evidence that the DEA arrested him prior to his trial on the current charges likely had a minimal effect on the jury's verdict. The petitioner therefore is not entitled to relief on the basis of his claim that defense counsel was ineffective for failing to object to "other acts" evidence.

### G.

The trial court sentenced the petitioner to a minimum sentence of 50 years in prison for the assault convictions. That was an upward departure from the state sentencing guidelines, which called for a minimum sentence in the range of 18 years, nine months to 39 years. The petitioner argues that he is entitled to re-sentencing because, in his opinion, the trial court did not provide a substantial and compelling reason for the departure from the guidelines and the departure was disproportionate under state law. Although the trial court did give reasons for departing from the guidelines range, the petitioner maintains that the reasons given were taken into account by the guidelines or were not objective and verifiable.

-24-

A claim that the state trial court incorrectly scored, calculated, or applied the state legislative sentencing guidelines is not a cognizable claim for federal habeas review because it is based solely on state law. *See McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Therefore, the petitioner's claim that the trial court erred by not adequately articulating its reasons for departing upward from the sentencing guidelines is not cognizable on federal habeas review because it is a state law claim. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797-98 (E.D. Mich. 1999).

The petitioner also may be arguing that his sentence is disproportionate to the offense, and therefore it violates the Eight Amendment's ban on cruel and unusual punishment. However, there is no constitutional right to strict proportionality in sentencing. *Harmelin v. Michigan*, 501 U.S. 957 (1997). The Eighth Amendment does prohibit "extreme sentences that are grossly disproportionate to the crime." *Id.* at 1001 (Kennedy, J., concurring) (internal citations and quotation marks omitted). But the Sixth Circuit has held that "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek*, 65 F.3d 60, 62-63 (6th Cir. 1995); *see also United States v. Williams*, 15 F.3d 1356, 1364 (6th Cir. 1994) (holding that generally, a sentence within statutory limitations does not violate the Eighth Amendment); *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (holding that "federal courts should be reluctant to review legislatively mandated terms of imprisonment and . . . successful challenges to the proportionality of particular sentences should be exceedingly rare") (internal quotation marks and citations omitted). The petitioner's sentence of 50 to 70 years for assault with intent to commit murder was within

-25-

Michigan's statutory limit of imprisonment for life or any number of years, Mich.  Comp. Laws §
750.83.  Therefore, the petitioner has failed to prove an Eighth Amendment violation under which
he would be entitled to habeas corpus relief.

Moreover, the Michigan Court of Appeals found that the trial court did not abuse its
discretion in finding substantial and compelling reasons for departing from the minimum sentencing
guidelines range.  Although the petitioner argued that the trial court improperly based its departure
on the number of victims and his ex-offender status, the court of appeals agreed with the trial court
that the guidelines did not adequately account for the number of victims and the petitioner's
disregard for human life or for the petitioner's commission of a crime shortly after his discharge
from parole.  Even if the Eighth Amendment provided relief for disproportionate sentences, the
sentences in this case were not disproportionate to the crimes.

## H.

The eighth claim alleges that the cumulative effect of the errors in this case deprived the
petitioner of his constitutional right to due process of law.  The Michigan Court of Appeals reviewed
this claim for "plain error" because the petitioner did not preserve the claim for appellate review.
The court of appeals then determined that no actual error cumulatively affected the petitioner's right
to a fair trial.

This Court must reject the petitioner's claim because the Supreme Court has never held that
cumulative errors may form the basis for issuance of a writ of habeas corpus.  *Lorraine v. Coyle*,
291 F.3d 416, 447 (6th Cir. 2002).  The petitioner's cumulative-error claim, therefore, is not
cognizable on habeas corpus review.  *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing
*Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

I.

The ninth habeas claim alleges that the prosecution engaged in an abuse of process by commencing a prosecution against the petitioner. The petitioner alleges that none of the alleged victims filed a formal complaint or testified against him and the trial court lacked subject matter jurisdiction.

The petitioner relies on Michigan Compiled Laws §§ 750.369 and 764.1d and Michigan Court Rule 6.101(B). Section 750.369 reads:

> Abuse of Legal Process — Any officer or person who shall wilfully make any arrest or institute any legal proceedings, or sue out any process for the purpose of obtaining the fees or mileage that might accrue thereto or therefor, shall be guilty of a misdemeanor.

Section 764.1d states that "[a] complaint shall recite the substance of the accusation against the accused. The complaint may contain factual allegations establishing reasonable cause." And Rule 6.101(B) states that "[t]he complaint must be signed and sworn to before a judicial officer or court clerk."

The Court may not issue the writ of habeas corpus on the basis that the prosecution violated these statutes and rule. *Harris*, 465 U.S. at 41. The state trial court, moreover, found no merit in the petitioner's claims. The state court rejected the petitioner's argument under § 750.369 because the petitioner failed to demonstrate that his arrest was for the purpose of obtaining fees or mileage. The court rejected the claim under Michigan Court Rule 6.101(B), because the court file contained a sworn complaint by a police officer.

The contention that the state court lacked subject matter jurisdiction is meritless because a "[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).

-27-

Even if the petitioner's jurisdictional claim were cognizable on habeas review, the petitioner was charged with several felonies, and state "circuit courts have original jurisdiction over all criminal cases involving felonies." *People v. Scott*, 275 Mich. App. 521, 523 n.1, 739 N.W.2d 702, 704 n.1 (2007) (citing Mich. Comp. Laws § 600.601). The Wayne County Circuit Court therefore had subject-matter jurisdiction in the petitioner's case. He has no right to relief on the basis of his jurisdictional and abuse-of-process claim.

J.

The tenth habeas claim alleges that the prosecution lacked probable cause to charge and arrest the petitioner and failed to follow the proper protocol following his arrest. The petitioner points out that there was no lineup and no tests performed on the weapons in evidence to determine whether he had used them. Additionally, the petitioner states that his attire at the time of the incident did not match the witnesses' description of what the suspects were wearing. The petitioner contends that these defects prevented the state trial court from obtaining subject matter jurisdiction.

The state trial court determined on review of the petitioner's claim that even if the arrest warrant were defective, it did not divest the court of jurisdiction to try the offense because jurisdiction was acquired when the petitioner was bound over to circuit court following the preliminary examination. The state court rejected the petitioner's remaining claims on the basis that the petitioner failed to cite any relevant authority for his contention that witnesses were required to give a written statement, file a citizen's complaint, appear at a lineup, or testify at the preliminary examination.

The alleged violations of state requirements for complaints and warrants is not a basis for habeas relief, *McGuire*, 502 U.S. at 67-68; *Jeffers*, 497 U.S. at 780, and the determination of

-28-

whether the state court was vested with jurisdiction is not a function of this Court. *Wills v. Egeler*, 532 F.2d at 1059. Further, "the probable cause determination is not a constitutional prerequisite to the charging decision," and an "illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 125 n.26, 119 (1975). The petitioner therefore has no right to relief on the basis of his claim that the prosecution lacked probable cause to charge and arrest him and failed to follow the proper protocol following his arrest.

K.

The eleventh habeas claim alleges that the petitioner was denied his right to a lineup at which the only witness to identify him could have made a determination as to whether he really was the shooter. According to the petitioner, if Muhammad Shahid would have viewed the petitioner in a lineup, he would not have identified the petitioner because the petitioner is several inches taller than the suspect Shahid described. The petitioner further alleges that the photo show-up was tainted and unduly suggestive because the photo depicted only his head and not his height or weight. The petitioner also claims that the photo show-up should not have been conducted because he was in custody and represented by counsel at the time. The state trial court rejected the petitioner's claim because the petitioner failed to establish that the photo array was unduly suggestive and that he would have had a likely chance of acquittal if he had been placed in a live lineup.

An accused has no constitutional right to a pretrial lineup. *Branch v. Estelle*, 631 F. 2d 1229, 1234 (5th Cir. 1980); *United States v. Robertson*, 606 F.2d 853, 857 (9th Cir. 1979); *Reyes v. Slayton*, 341 F. Supp. 926, 927 (W.D. Va. 1972). And the petitioner has not shown that the photo array was unduly suggestive or otherwise tainted. Although only head shots were used, Muhammad Shahid identified the petitioner in a short amount of time and apparently recognized the petitioner's

-29-

face.  Furthermore, the record indicates that an attorney was present at the show-up, Trial Tr. Vol. I, 181 (May 1, 2007), to ensure the fairness of the array, Trial Tr. Vol. III, 28 (May 3, 2007).

The rule that a photo show-up cannot be used if the suspect is in custody is based on *People v. Kurlyczyk*, 443 Mich. 289, 297-98 & 298 n.8, 505 N.W.2d 528, 532 & 532 n.8 (1993).  The alleged violation of state law is not a basis for habeas corpus relief.  *McGuire*, 502 U.S. at 67–68; *Harris*, 465 U.S. at 41.  The Court therefore declines to grant relief on the basis of the petitioner's claim that the identification procedures used in his case were tainted.

## L.

In his thirteenth claim, the petitioner alleges that he was denied his right to confront and cross-examine the witnesses against him, because two of the alleged victims (Tommie Hodges and Meleta Miller)  did not testify at his preliminary examination or at trial and they declined to press charges or make a statement to the police.  The state trial court deemed this claim abandoned because the petitioner failed to cite any relevant authority for the principle that the victims should have testified at trial.

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The right to confront witnesses includes the right to cross-examine them. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (citing *Pointer v. Texas*, 380 U.S. 400, 404, 406-07 (1965)).  This right was not violated as to Meleta Miller because Miller did not testify against the petitioner either at trial or at the preliminary examination.  Nor were any out-

-30-

of-court statements that Miller may have made about the petitioner introduced at trial. Meleta Miller was not a "witness against" the petitioner.

Furthermore, "[t]here is no clearly established Supreme Court authority stating that a defendant's right of confrontation requires the victims of an offense to participate in a criminal prosecution by appearing in court or otherwise attending the trial." *Ray v. Cate*, No. C 10-01582 YGR (RR), 2013 WL 2456567, at *15 (N.D. Cal. June 6, 2013); *see also Garrett v. Prelesnik*, No. 09-11076, 2011 WL 2560266, at *6 (E.D. Mich. June 28, 2011) (rejecting the petitioner's claim that he had a constitutional right to have the victim testify and concluding that the petitioner had no constitutional right to confront a victim who was not a witness against him as contemplated by the Sixth Amendment). Therefore, the petitioner's claim as to Meleta Miller lacks merit.

The part of the petitioner's claim directed at Tommie Hodges is different because police officer Mark Carson testified concerning Hodges' out-of-court comments to Carson. "Where testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 68 (2004). In other words, the Sixth Amendment "contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." *Giles v. California*, 554 U.S. 353, 358 (2008) (citing *Crawford*, 541 U.S. at 68).

The term "testimonial" "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford,* 541 U.S. at 68. Statements to the police are testimonial when the circumstances objectively indicate that "the

-31-

primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

Officer Carson testified that Hodges and Miller eventually came into the police station and identified themselves as victims. Tommie Hodges' pretrial comments were testimonial because he made them to a police officer when there was no ongoing emergency and where the apparent purpose of the interview was to demonstrate what happened to him. *See* Trial Tr. Vol. II, 184-85 (May 2, 2007). Hodges was "unavailable" to testify at trial because he invoked his right to remain silent on the ground that anything he said might incriminate him in a drug conspiracy case pending against him in federal court. Trial Tr. Vol. I, 3-10 (May 1, 2007). And because the petitioner had no prior opportunity to cross-examine Hodges, the Confrontation Clause was violated by Officer Carson's testimony regarding what Hodges told him.

Violations of the Confrontation Clause nevertheless are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Vasquez v. Davis*, 496 F.3d 564, 574 (6th Cir. 2007). A constitutional error is not harmless if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. Officer Carson testified that Hodges stated to him

> that he was in front of Tiffany's night club, seated in his vehicle with Meleta Miller when they heard rapid gunfire coming from the direction of Gratiot [Avenue]. Their vehicle was struck several times, and at that point . . . they pulled off, and pulled in front of 1300 Beaubein (sic) in their vehicle; at which time they exited their vehicle and ran towards . . . Macomb [Street].

Trial Tr. Vol. II, 186 (May 2, 2007). Hodges also gave a brief description of the suspects to Officer Carson, describing

-32-

two black males, tall and thin, wearing dark clothing armed with unknown long guns. . . . They fired several shots in their direction, hitting their vehicle several times.

*Ibid*.

Hodges did not identify the petitioner in his comments to Officer Carson, and the comments he made to Carson duplicated other evidence in the case. Therefore, Officer Carson's testimony concerning what Hodges told him could not have had a substantial and injurious effect or influence on the jury's verdict and was harmless. The petitioner is not entitled to habeas corpus relief on the basis of his claim under the Confrontation Clause.

## M.

The fourteenth claim alleges that the prosecution used Tommie Hodges and Meleta Miller as victims to multiply the number of charges against the petitioner. According to the petitioner, that tactic resulted in him being punished multiple times for the same offense of assault with intent to commit murder. The state trial court adjudicated this claim on collateral review and concluded that the petitioner's multiple convictions for assault with intent to commit murder did not violate double jeopardy principles because the crimes were committed against different victims.

The Double Jeopardy Clause of the Fifth Amendment states that "[n]o person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. The Clause is "applicable to the States through the Fourteenth Amendment," *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988), "[a]nd it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled in part on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989).

-33-

> What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment. Specifically, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed.2d 535 (1983).

*Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014).

In Michigan, "[t]he assault statutes . . . are clearly intended to punish crimes against persons." *Lugo*, 214 Mich. App. at 708, 542 N.W.2d at 926. Therefore, "[w]here crimes against persons are involved . . . a separate interest of society has been invaded with each victim and . . . where two persons are assaulted, there are two separate offenses." *People v. Lovett*, 90 Mich. App. 169, 174, 283 N.W.2d 357, 360 (1979). The petitioner's three convictions of assault with intent to murder were based on assaults directed at three different persons: Tommie Hodges, Meleta Miller, and Darryl White. The state trial court therefore correctly concluded that the petitioner's multiple convictions did not violate double jeopardy principles. The petitioner has no right to relief on the basis of his double jeopardy claim.

N.

The petitioner alleges in his sixteenth claim that the prosecution obstructed justice by suppressing discovery materials when it tampered with identification procedures and suppressed ballistics evidence regarding the rifles found by the police. He also insists that he is actually innocent. The state trial court rejected the petitioner's claim on the ground that he failed to establish a reasonably likely chance of acquittal absent the alleged prosecutorial misconduct.

The petitioner relies on *Brady v. Maryland*, 373 U.S. 83, 87 (1963), in which the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of

-34-

the good faith or bad faith of the prosecution."  The petitioner's reliance on *Brady* is misplaced because there is no reason to believe that the prosecution suppressed favorable evidence.

The petitioner also has not shown that the prosecution obstructed justice by tampering with Muhammad Shahid's identification of him.  He was not entitled to an in-person lineup, and he has not demonstrated that the procedures used during the photographic show-up were unduly suggestive.

Finally, even though the petitioner claims to be actually innocent, a freestanding claim of actual innocence is not a constitutional claim for which habeas relief may be granted.  *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993).  The Court therefore declines to grant relief on the petitioner's claim that the prosecution obstructed justice by suppressing evidence.

O.

The seventeenth habeas claim alleges that the trial court was biased against the petitioner. That claim stems in part from the trial court allowing the prosecutor to proceed on the basis that Tommie Hodges was a victim, not a defendant.  It appears that at one point during the investigation, Hodges was listed as a defendant.  Trial Tr. Vol. III, 73 (May 3, 2007).  The petitioner also blames the trial court for his arrest, the identification of him, the charges against him, the bindover to circuit court, the alleged violation of the Double Jeopardy Clause, the conviction on allegedly insufficient evidence, and the prosecutor's conduct.

The state trial court did not address the petitioner's claim of judicial bias in its order denying the petitioner's motion for relief from judgment.  The state court did say in its concluding paragraph of the order that the petitioner failed to establish he would have had a reasonably likely chance of acquittal absent the claimed errors and that the petitioner failed to prove actual prejudice requiring a reversal of his convictions.

-35-

The Supreme Court has held that a criminal defendant has the right to an impartial judge no matter what the evidence against the defendant may be. *Tumey v. Ohio*, 273 U.S. 510, 535 (1927). The right to an impartial adjudicator, be it judge or jury, is a right so basic to a fair trial that its infraction can never be treated as harmless error. *Gray v. Mississippi*, 481 U.S. 648, 668 (1987) (citing *Chapman v. California*, 386 U.S. 18, 23 n.8 (1967)). But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and critical or disapproving judicial remarks to counsel or the parties ordinarily do not support a bias or partiality challenge. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Nor do "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, . . . constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Ibid.* "Judicial misconduct is found where the judge's remarks clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment on the part of the Court with one of the parties, or where the judge . . . abandons his proper role and assumes the role of an advocate." *United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006) (citations and quotation marks omitted).

The petitioner's claim of judicial bias lacks merit because he blames the trial court for conduct attributable to the prosecutor. Further, the record does not establish that the trial court was biased against the petitioner, and at the close of the case and before the jury deliberated, the trial court informed the jurors that its comments, rulings, questions, and instructions were not evidence. The trial court also stated that, when it made a comment or gave an instruction, it was not trying to influence the jurors' vote or express a personal opinion on how they should decide the case. The court charged the jurors that, if they believed the court had an opinion about how they should decide

-36-

the case, they must pay no attention to that opinion because they were the sole judges of the facts. Trial Tr. Vol. III, 136-37 (May 3, 2007). These instructions served as a measure against any possible prejudice caused by the trial court's comments. *United States v. Powers*, 500 F.3d 500, 514 (6th Cir. 2007) (citing *McMillan v. Castro*, 405 F.3d, 405, 410 (6th Cir. 2005), and *United States v. Johnson*, 182 F. App'x 423, 434 (6th Cir. 2006)). The petitioner therefore has no right to relief on the basis of his judicial-misconduct claim.

P.

The eighteenth claim alleges that the prosecution engaged in selective prosecution. As proof of this, the petitioner insists that there were no eyewitnesses and no complaining witnesses or ballistic tests to prove that he was the shooter. The petitioner further supports his claim of selective prosecution by pointing to what he claims was an unlawful arrest, a tainted identification, an unwarranted charge of assault with intent to commit murder, a defective bindover, a violation of the Double Jeopardy Clause, insufficient evidence, obstruction of justice, and bolstering during closing arguments.

Under the Supreme Court's "selective prosecution doctrine, 'the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights.'" *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 497 (1999) (Ginsburg, J., concurring in part and concurring in the judgment) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

Prosecuting attorneys retain broad discretion to enforce criminal laws. *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

> As a result, "[t]he presumption of regularity supports" their prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have

-37-

properly discharged their official duties." *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926). In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).
. . .

In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "clear evidence to the contrary." *Chemical Foundation, supra*, at 14-15.

*Id*. at 464-465.

The state trial court did not address the petitioner's claim in its order denying the petitioner's motion for relief from judgment. Nevertheless, there is no evidence in the record before this Court that the petitioner was charged as a result of selective prosecution. The petitioner argues that there was no direct evidence to prove that he was the shooter, but the circumstantial evidence strongly suggested that he fired a rifle at the victims. He has presented no clear evidence that the prosecutor violated his right to equal protection of the law. The Court therefore declines to grant relief on the basis of the petitioner's selective-prosecution claim.

## Q.

In his nineteenth and final claim, the petitioner alleges that his trial attorney was grossly negligent, because counsel failed to establish his innocence, failed to attack the legality of his arrest, and failed to present a valid and pertinent defense. The state trial court found no merit in the petitioner's underlying arguments and concluded that trial counsel could not be deemed ineffective for failing to make meritless arguments.

The petitioner must show more than negligence to prevail on his claim. He must show both deficient performance and prejudice. *Strickland*, 466 U.S. at 487. In addition to showing that

-38-

counsel's representation fell below an objective standard of reasonableness, the petitioner must demonstrate a substantial likelihood that the outcome would have been different, absent counsel's deficient performance. *Richter*, 562 U.S. at 1-04, 111-112.

The petitioner's trial counsel gave an opening statement and closing argument, made objections during trial, and pointed out on cross-examination of witnesses that none of the witnesses saw the petitioner fire or possess a gun. Defense counsel also challenged the reliability of gunshot residue tests, and he elicited testimony demonstrating that Muhammad Shahid's description of the suspect was inaccurate. Counsel's conduct can hardly be described as negligent, for he made a concerted effort to show that the petitioner was innocent of the charges.

The petitioner has failed to show that defense counsel's performance was defective and that the defective performance prejudiced the defense. Furthermore, the  state trial court's conclusion that trial counsel was not ineffective was objectively reasonable. The petitioner therefore has no right to relief on the basis of his claim about trial counsel.

III.

For the reasons stated, the Court finds that the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 18, 2015

-39-

2:11-cv-15162-DML-LJM   Doc # 16   Filed 03/18/15   Pg 40 of 40   Pg ID 1741

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 18, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI

-40-